IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| JERRY FERGUSON, | ) | |
|     Petitioner, | ) | Civil Action No. 09-213 Erie |
| | ) | |
| v. | ) | District Judge Sean J. McLaughlin |
| | ) | Magistrate Judge Susan Paradise Baxter |
| FRANCISCO QUINTANA, et al., | ) | |
|     Respondents. | ) | |

## MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION

**I.    RECOMMENDATION**

It is recommended that the Petition For Writ Of Habeas Corpus be denied and that a certificate of appealability be denied.

**II.    REPORT**

Petitioner Jerry Ferguson is a state prisoner serving a judgment of sentence of 10-20 years. It was imposed by the Court of Common Pleas of Erie County on October 29, 2003, on convictions of aggravated assault and reckless endangerment. In his Petition For Writ Of Habeas Corpus [ECF No. 5], filed pursuant to 28 U.S.C. § 2254, Ferguson first claims that the Commonwealth violated its obligations under Brady v. Maryland, 373 U.S. 83 (1963), for failing to disclose to the defense a letter defense witness Ricardo Jones had written to the police. (As explained below, the letter was disclosed during Ferguson's trial, after the defense had concluded its direct examination of Jones). In his second claim, Ferguson contends that the jury's verdict was against the weight of the evidence.

A.  **<u>Relevant History</u>**[1]

The Superior Court of Pennsylvania recounted the facts of Ferguson's trial[2] as follows:

This matter arises out of an assault by multiple perpetrators when one or more of them took offense to the victim's sarcastic response to a request for a cigarette. On the evening of August 26, 2002, victim Jason Cambra left his apartment to get bread, milk and snacks at the local Dairy Mart convenience store. After leaving the store, Cambra encountered Ferguson who, along with cohort Ricardo Jones and three others, were"hanging out" on the street. As Cambra walked past, one of them asked, "Yo, do you have a cigarette?" to which Cambra replied "Yo, I don't smoke." Finding Cambra's response offensive, Ferguson struck Cambra in the head, knocking him to the ground and, with the others, continued to punch and kick him until Cambra lay unconscious. Cambra suffered multiple compressed facial fractures requiring surgical repair. Due to the trauma he sustained, Cambra has no recollection of the attack.

At trial, the parties produced conflicting testimony to account for who participated in the beating. In its case-in-chief, the Commonwealth called … an acquaintance, Sylvester Tate.[3] Tate testified that he had been walking down an alley adjacent to the Dairy Mart when he saw Cambra walking near a group of five young men, including Ferguson and Jones. Tate saw Ferguson speak to Cambra and then strike him in the face, causing him to fall to the ground. Tate testified that the group of men then kicked Cambra for a couple of minutes while he lay unconscious.

The Commonwealth next offered the testimony of Paul Davis. Davis stated that he was present at Chrisandra's bar, located across the street from the Dairy Mart. As he exited the bar, Davis observed a "white person" and a "black dude" talking loudly near a group of young men. The white man then began to walk away when one of the young men, who Davis recognized as Chaz Mathis, hit him "from the blind side." Davis further stated that Ferguson was present and kicked the man repeatedly. Davis also testified that Jones participated in the attack.

Ferguson called Ricardo Jones, his cousin, who testified that he alone encountered Cambra outside of the Dairy Mart as he walked to his grandmother's house to meet Ferguson. Jones testified that it was he who approached Cambra and asked for a cigarette and then punched him in the head. Jones stated further that after Cambra fell to the

---

[1] Respondents have filed the relevant state court records, including the Common Pleas Court's file, which will be cited to as "CP Dkt. No. __ ."

[2] A.J. Adams, Esq., represented Ferguson at his trial.

[3] In the text which has been omitted, the Superior Court incorrectly stated that the Commonwealth also had called Ricardo Jones in its case-in-chief. In fact, Jones was called to testify for the first time by the defense during its case. (<u>See</u> Trial Tr. 9/12/03 at 49-88).

2

> ground, he "got on top of" him and beat him. As a result of this incident, Jones pled guilty to charges against him.
>
> - - -
>
> On September 12, 2003, the jury convicted Ferguson of aggravated assault and recklessly endangering another person…. The court … subsequently sentenced Ferguson to ten to twenty years' incarceration.

Commonwealth v. Ferguson, 866 A.2d 403, 404-05 (Pa.Super. 2004).

Following his sentencing, Ferguson, through counsel, filed an appeal with the Superior Court of Pennsylvania. In that appeal, Ferguson raised the same two issues which he now raises in his petition for federal habeas relief. (See *Brief For Appellant*, No. 2068 WDA 2003 (Pa.Super. Mar. 24, 2004)).

On December 21, 2004, the Superior Court, in a 2-1 decision, issued an Opinion in which it affirmed Ferguson's judgment of sentence. Ferguson, 866 A.2d at 404-09. It denied the Brady claim on the merits and denied the weight of evidence claim because Ferguson failed to preserve it before the trial court pursuant to Rule 607 of the Pennsylvania Rules of Criminal Procedure.

On September 28, 2005, the Pennsylvania Supreme Court denied Ferguson's petition for allowance of appeal. Commonwealth v. Ferguson, 885 A.2d 40 (Pa. 2005). He did not file a petition for writ of certiorari with the U.S. Supreme Court. Accordingly, his judgment of sentence became final on the date the 90-day period to do so expired, which was on or around December 27, 2005. See, e.g., Swartz v. Meyers, 204 F.3d 417, 419 (3d Cir. 2000).

In the meantime, before his judgment of sentence had become final, Ferguson filed, on or around December 12, 2005, a *pro se* motion under Pennsylvania's Post Conviction Relief Act ("PCRA"), 42 Pa.C.S. § 9541 *et seq.* The PCRA Court appointed counsel and a supplemental PCRA motion was filed in which Ferguson raised claims that at not relevant to this proceeding. (See CP Dkt. Nos. 27-28).

3

On August 3, 2006, the PCRA Court denied Ferguson's request for post-conviction relief. (CP Dkt. Nos. 29, 31). On December 31, 2007, the Superior Court issued a Memorandum in which it affirmed the PCRA Court's decision. (CP Dkt. No. 45, Commonwealth v. Ferguson, 249 WDA 2007, slip op. (Pa.Super. Dec. 31, 2007)). On September 19, 2008, the Pennsylvania Supreme Court denied Ferguson's petition for allowance of appeal. (CP Dkt. No. 44).

On January 22, 2009, Ferguson filed a second PCRA motion, in which he raised claims not relevant to this proceeding. (CP Dkt. No. 46). The PCRA Court appointed him counsel, who subsequently filed a "no merit" letter and a request to withdraw. (CP Dkt. No. 51). On July 14, 2009, the PCRA Court issued an order in which it denied Ferguson's request for relief because, *inter alia*, the second PCRA motion was untimely under the applicable one-year statute of limitations, 42 Pa.C.S. § 9545(b). (CP Dkt. Nos. 54-55).

Next, Ferguson commenced habeas proceedings in this Court, in which he raises the same Brady and weight of evidence claims that the Superior Court denied on direct review. [ECF No. 5]. As relief, he seeks a new trial.[4]

### B. Legal Analysis

#### 1. Brady Claim

##### (a) Background

During his direct examination by defense counsel, Ferguson's cousin Ricardo Jones testified that it was he who had assaulted the victim, Cambra. Jones also testified that Ferguson was not present at

---

[4] In their Answer [ECF No. 12], Respondents contend, *inter alia*, that the petition should be denied as untimely under the applicable statute of limitations, 28 U.S.C. § 2244(d). In calculating the timeliness of the petition, however, they use the wrong date. [ECF No. 12 at 4]. Ferguson filed his petition within the statute of limitations.

4

the time of the Cambra's beating.[5]  (9/12/03 Trial Tr. at 59-62).  Prior to cross-examining Jones, the prosecutor produced to the defense for the first time a letter that Jones had written to a police detective.  In the letter, Jones wrote that he (Jones) was innocent and that Sylvester Tate and Chaz Mathis had beat the victim.  The prosecutor informed the court that he had just become aware of the letter's existence a few days earlier.  Defense counsel objected to the late disclosure and explained that if he had known that the Commonwealth had a letter that it could use to impeach Jones's credibility, he either would not have called Jones as a defense witness "[o]r would have called him as a witness after confronting him with this prior inconsistent statement to insure that I wouldn't lose his credibility based upon [the letter]."  (Id. at 64-70).  The court overruled defense counsel's objection, reasoning that the defense had had the opportunity to interview Jones prior to the trial and could have and should have asked him if he had given any prior inconsistent statements to the police.  (Id. at 70).

When asked during cross-examination by the prosecutor whether he had ever given "any other stories about the incident in question," Jones admitted that he had written a letter to the police in which he lied in order to "try [and] save myself and get out of trouble."  (Id. at 77).  Jones stated that his direct examination testimony was truthful and that he had decided that it was best to be honest and take responsibility for what he had done to Cambra.  (Id. at 77-79).

The jury did not credit Jones's testimony and the rest of Ferguson's defense case and found Ferguson guilty of the crimes charged.  Ferguson claims, as he did before the Superior Court, that the Commonwealth violated its obligation under Brady to disclose Jones's letter and that the suppression was material.

### (b) Standard Of Review

---

[5] Jones testified that he had pled guilty to simple assault for his involvement in the beating of Cambra.  (9/12/03 Trial Tr. at 60).

5

In 1996, Congress enacted the Antiterrorism and Effective Death Penalty Act ("AEDPA"), which "modified a federal habeas court's role in reviewing state prisoner applications in order to prevent federal habeas 'retrials' and to ensure that state-court convictions are given effect to the extent possible under law." Bell v. Cone, 535 U.S. 685, 693 (2002). It "requires federal courts collaterally reviewing state proceedings to afford considerable deference to state courts' legal and factual determinations." Lambert v. Blackwell, 387 F.3d 210, 234 (3d Cir. 2004); see also Lewis v. Horn, 581 F.3d 92, 109-18 (3d Cir. 2009).

AEDPA restricts a federal court's authority to grant relief when, as is the case here, the state court has "adjudicated on the merits" the petitioner's federal constitutional claims. In such cases, federal habeas relief may only be granted when the state court's adjudication "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States[.]" 28 U.S.C. § 2254(d)(1). See also Williams v. Taylor, 529 U.S. 362, 405-06 (2000); Lambert, 387 F.3d at 234.[6] Review under § 2254(d) is limited to the record that was before the state court. Cullen v. Pinholster, — U.S. —, 131 S.Ct. 1388, 1398-1401 (2011).

As the Supreme Court recently observed:

If this standard is difficult to meet, that is because it was meant to be. As amended by AEDPA, § 2254(d) stops short of imposing a complete bar on federal court relitigation of claims already rejected in state proceedings. Cf. Felker v. Turpin, 518 U.S. 651, 664, 116 S.Ct. 2333, 135 L.Ed.2d 827 (1996) (discussing AEDPA's "modified res judicata rule" under § 2244). *It preserves authority to issue the writ in cases where there is no possibility fairminded jurists could disagree that the state court's decision conflicts with*

---

[6] "A state-court decision is 'contrary to' clearly established federal law if the state court (1) 'contradicts the governing law set forth in [the Supreme] Court's cases' or (2) 'confronts a set of facts that are materially indistinguishable from a decision of [the Supreme] Court and nevertheless arrives at a [different] result.'" Lambert, 387 F.3d at 234, quoting Williams, 529 U.S. at 405-06. "A state-court decision 'involve[s] an unreasonable application' of clearly established federal law if the state court (1) 'identifies the correct governing legal rule from [the Supreme] Court's cases but unreasonably applies it to the facts of the particular…case'; or (2) 'unreasonably extends a legal principle from [Supreme Court] precedent to a new context where it should not apply or unreasonably refuses to extend that principle to a new context where it should apply.'" Lambert, 387 F.3d at 234, quoting Williams, 529 U.S. at 407.

6

> *this Court's precedents. It goes no farther.* Section 2254(d) reflects the view that habeas corpus is a "guard against extreme malfunctions in the state criminal justice systems," not a substitute for ordinary error correction through appeal. Jackson v. Virginia, 443 U.S. 307, 332, n. 5, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979) (Stevens, J., concurring in judgment). As a condition for obtaining habeas corpus from a federal court, a state prisoner must show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement.

Harrington v. Richter, — U.S. —, 131 S.Ct. 770, 786-87 (2011) (emphasis added).

### (c) Discussion

"It is clearly established that 'the suppression by the prosecution of evidence favorable to an accused upon request violates due process where the evidence is material either to guilt or to punishment.' Brady v. Maryland, 373 U.S. 83, 87 (1963). Brady thus envisions two requirements for overturning a verdict: (1) that evidence in the possession of the government was actually suppressed, and (2) that the suppressed evidence was material." Slutzker v. Johnson, 393 F.3d 373, 386 (3d Cir. 2004) (parallel citations omitted). Ferguson argues that Jones's letter was exculpatory because it placed the blame of the assault on two other assailants. Ferguson also contends that since what Jones had written in the letter contradicted his subsequent trial testimony that it was he (Jones) who had assaulted Cambra, his defense strategy may have changed if the prosecution had produced the letter prior to trial.

In rejecting Ferguson's claim, the Superior Court focused its analysis on Brady's materiality prong. In United States v. Bagley, 473 U.S. 667, 682 (1985), the U.S. Supreme Court explained that evidence is "material" within the meaning of Brady when there is a reasonable probability that, had the evidence been disclosed, the result of the proceeding would have been different. In Kyles v. Whitley, 514 U.S. 419, 432 (1995), the Supreme Court quoted Bagley when it explained:

> [The] touchstone of materiality is a "reasonable probability" of a different result, and the adjective is important. The question is not whether the defendant would more likely than not have received a different verdict with the evidence, but whether in its absence he

7

received a fair trial, understood as a trial resulting in a verdict worthy of confidence. A "reasonable probability" of a different result is accordingly shown when the government's evidentiary suppression "undermines confidence in the outcome of the trial." Bagley, 473 U.S. at 678[.]

Kyles, 514 U.S. at 434 (emphasis added) (additional internal citations omitted).

The Superior Court applied this materiality analysis and concluded:

Sylvester Tate, who had been Ferguson's best friend since the two were in first grade, N.T., 9/11/03, at 92, stood only several yards away, watching as the melee began, N.T. 9/11/03, at 100. He gave a detailed account of what happened, recalling that Jerry Ferguson and Ricardo Jones were among a group of four teenagers who challenged the victim as he walked down the street carrying groceries. N.T., 9/11/03, at 97-99. He heard Ferguson say something to the victim as he passed and then saw him hit the victim in the head with sufficient force that he collapsed to the ground without even a chance to exchange blows. N.T., 9/11/03, at 100-01. Tate continued to watch as all of the youths, Ferguson still among them, began to kick and stomp the victim all over his body. N.T., 9/11/03, at 101-02, 116. Tate's testimony remained consistent, unshaken even on cross-examination, N.T., 9/11/03, at 111-15.

Similarly, eyewitness Paul Davis also recalled the melee, confirming that Ferguson joined in kicking and stomping the victim as he lay on the pavement. N.T., 9/12/03, at 7. Although his recollection of the first blow, which he said was struck by another member of the group, N.T., 9/12/03, at 6, varied from Tate's recollection, it established nonetheless that Ferguson had been one of the victim's assailants. Although this variation might assume greater significance had the offense arguably been committed by only a single assailant, the evidence here is overwhelming that the offense was committed by at least four people. Hence, Davis's recollection that someone other than Ferguson struck the first blow does little to detract from the evidence, on which both witnesses agreed, that Ferguson participated in an aggravated assault upon the victim. Indeed, the eyewitnesses' testimony did not vary on that point…. [T]he verdict here is grounded on the testimony of eyewitnesses, both of whom attested to Ferguson's role in the assault. Regardless of whether the defense had chosen to call Ricardo Jones to attest to his own role in the assault, his testimony of his own involvement would not negate the testimony of the Commonwealth's witnesses that Ferguson too was involved. Accordingly, the fact that Jones's credibility could be called into question based on a letter not disclosed to the defense cannot be deemed so critical as to show "a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different," Bagley, 473 U.S. at 682 (citing Strickland, 466 U.S. at 694); nor can it be said to "make the difference between conviction and acquittal." [Commonwealth v. Santiago, 591 A.2d 1095, 1117 (Pa. 1991)], (quoting Bagley, 473 U.S. at 676).

Because we do not find Jones's letter sufficient to yield so great a difference, even if disclosed, we cannot find it "material" within the meaning of Brady and its progeny.

8

> Consequently, we find no due process violation and no ground on which to grant a new trial. Although we do not condone the apparent lack of diligence that prompted the Commonwealth's nondisclosure, we do not find it a sufficient reason on which to grant a new trial.

Ferguson, 866 A.2d at 408-09.

The Superior Court applied the correct legal standard when it evaluated Ferguson's Brady claim; therefore, its adjudication satisfies review under the "contrary to" clause of § 2254(d)(1). See Williams, 529 U.S. at 406. The Superior Court's adjudication also satisfies the "unreasonable application" clause of § 2254(d)(1). This Court is cognizant that the Brady materiality standard is not a "sufficiency of the evidence" test and instead turns on whether the withheld evidence could reasonably "put the whole case in such a different light as to undermine confidence in the verdict." Kyles, 514 U.S. at 435 & n. 8. The Superior Court did not apply a sufficiency of the evidence test. It appropriately looked to the strength of the Commonwealth's case against Ferguson, including testimony from two eyewitnesses, and determined that Ferguson failed to show that it is reasonably probable that, had Jones's letter been disclosed to the defense prior to trial, the result of his trial would have been different.

Ferguson has failed to show that the Superior Court's ruling on his Brady claim "was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." Harrington, 131 S.Ct. at 786-87. Accordingly, he is not entitled to federal habeas relief on his Brady claim.

### 2. Weight Of The Evidence Claim

In his second claim, Ferguson contends that the jury's verdict was against the weight of the evidence. This claim is not cognizable in federal habeas because it raises solely an issue of state law. Tibbs v. Florida, 457 U.S. 31, 37-45 (1982) (weight of evidence claims raise questions of credibility; it

9

is different from a claim that the evidence was insufficient to support the conviction); see also Young v. Kemp, 760 F.2d 1097, 1105 (11th Cir. 1985) ("A federal habeas court has no power to grant habeas corpus relief because it finds that the state conviction is against the 'weight' of the evidence[.]"). In conducting habeas review for a state prisoner such as Ferguson, this Court is limited to deciding whether his state conviction violated the Constitution of the United States, 28 U.S.C. § 2254(a), and may not rule on issues of purely state-law error. See, e.g., Estelle v. McGuire, 502 U.S. 62, 67-68 (1991). Accordingly, this claim must be denied.

### C. Certificate of Appealability

AEDPA codified standards governing the issuance of a certificate of appealability for appellate review of a district court's disposition of a habeas petition. 28 U.S.C. § 2253 provides that "[a] certificate of appealability may issue ... only if the applicant has made a substantial showing of the denial of a constitutional right." Where the district court has rejected a constitutional claim on its merits, "[t]he petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." Slack v. McDaniel, 529 U.S. 473, 484 (2000). Applying this standard here, jurists of reason would not find it debatable whether the petition should be denied. Accordingly, a certificate of appealability should be denied.

## III. CONCLUSION

For the foregoing reasons, it is respectfully that recommended that the Petition For Writ Of Habeas Corpus be denied and that a certificate of appealability be denied.

Pursuant to the Magistrate Judges Act, 28 U.S.C. § 636(b)(1)(B) and (C), and Rule 72.D.2 of the Local Civil Rules, the petitioner must seek review by the district court by filing objections in accordance with the schedule established in the docket entry reflecting the filing of this Report and Recommendation. Failure to do so will waive the right to appeal. Brightwell v. Lehman, 637 F.3d 187, 193 n.7 (3d Cir. 2011).

/s/ Susan Paradise Baxter
SUSAN PARADISE BAXTER
United States Magistrate Judge

Dated: July 7 , 2011

cc: The Honorable Sean J. McLaughlin
United States District Judge